UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| KENT A. VUCUREVICH,<br><br>       Appellant,<br><br>vs.<br><br>FIRST MIDWEST BANK,<br><br>       Appellee. | CIV. 14-4064-KES<br><br>MEMORANDUM OPINION AND ORDER AFFIRMING BANKRUPTCY COURT'S DECISION |

Appellant, Kent A. Vucurevich, appeals from the April 15, 2014, order issued by the United States Bankruptcy Court for the District of South Dakota,[1] denying his motion to set aside and vacate the court's grant of summary judgment in favor of appellee, First Midwest Bank. Bankr. Docket 34.[2] For the following reasons, the court affirms the bankruptcy court's decision.

**BACKGROUND**

The pertinent, undisputed facts are as follows:

Vucurevich was placed into bankruptcy by an involuntary petition filed by several creditors on June 27, 2011. *See* 4:11-bk-40501. The bankruptcy court granted the petition and entered an order for relief under Chapter 7 of

---

[1] The Honorable Charles L. Nail, Jr., Chief Judge.

[2] "Bankr. Docket" refers to documents filed in the United States Bankruptcy Court for the District of South Dakota under docket number 4:12-4004.

U.S.C. title 11 on August 1, 2011. First Midwest subsequently filed an adversary complaint against Vucurevich on February 2, 2012, objecting to the discharge of certain of Vucurevich's debts. Bankr. Docket 1. The case was held in abeyance pending resolution of other adversary proceedings until the bankruptcy court issued an order on November 7, 2013, which allowed the case to resume. Bankr. Docket 25.

On February 28, 2014, First Midwest moved the bankruptcy court for summary judgment. Bankr. Docket 26. Pursuant to the bankruptcy court's order dated March 3, 2014, Vucurevich's responsive documents were due on or before March 28. Bankr. Docket 27. Vucurevich did not file a response. On March 31, 2014, the bankruptcy court granted First Midwest's unopposed motion for summary judgment, and entered an order denying Vucurevich's request for discharge. Bankr. Docket 29, 30.

On April 11, 2014, Vucurevich moved the bankruptcy court to set aside and vacate its order granting summary judgment in favor of First Midwest. Bankr. Docket 32. Vucurevich argued relief was appropriate under the circumstances due to counsel's excusable neglect. *See, e.g.*, Bankr. Docket 32-2 at 1. On April 15, 2014, the motion was denied. Bankr. Docket 34. Vucurevich seeks review of the bankruptcy court's decision to deny his motion and, pursuant to 28 USC §§ 158(a) and 158(c)(1), filed his appeal in this court.

## LEGAL STANDARD

"When a bankruptcy court's judgment is appealed to the district court, the district court acts as an appellate court and reviews the bankruptcy court's

legal determinations de novo and findings of fact for clear error." *Knudsen v. I.R.S.*, 581 F.3d 696, 704 (8th Cir. 2009) (internal citation omitted), *abrogated on other grounds by Hall v. United States*, 132 S. Ct. 1882 (2012). The bankruptcy court's grant or denial of a motion seeking relief from a judgment or order is reviewed for an abuse of discretion. *City of Duluth v. Fond du Lac Band of Lake Superior Chippewa*, 702 F.3d 1147, 1152 (8th Cir. 2013). Under this standard, the Eighth Circuit has explained that:

> A court abuses its discretion when a relevant factor that should have been given significant weight is not considered; when an irrelevant or improper factor is considered and given significant weight; or when all proper factors and no improper ones are considered, but the court commits a clear error of judgment in weighing those factors.

*Id.* (citing *Thatcher v. Hanover Ins. Grp., Inc.*, 659 F.3d 1212, 1213 (8th Cir. 2011)).

## DISCUSSION

Rule 60(b)(1) of the Federal Rules of Civil Procedure allows a court to relieve a party from a final judgment, order, or proceeding due to "mistake, inadvertence, surprise, or excusable neglect[.]" Fed. R. Civ. P. 60(b)(1). Rule 60(b) is made applicable to bankruptcy proceedings by virtue of Bankruptcy Rule 9024. *In re Kirwan*, 164 F.3d 1175, 1177 (8th Cir. 1999). The rule is grounded in equity and it "is to be given a liberal construction so as to do substantial justice and 'prevent the judgment from becoming a vehicle of injustice.' " *MIF Realty L.P. v. Rochester Assocs.*, 92 F.3d 752, 755 (8th Cir. 1996) (quoting *Rosebud Sioux Tribe v. A & P Steel, Inc.*, 733 F.2d 509, 515 (8th Cir. 1984)). Its purpose "to preserve the delicate balance between the sanctity

of final judgments . . . and the incessant command of a court's conscience that justice be done in light of all the facts." *Id.* At the same time, "[r]elief under Rule 60(b) is an extraordinary remedy that lies within the discretion of the [bankruptcy] court." *Hunter v. Underwood*, 362 F.3d 468, 475 (8th Cir. 2004) (quoting *In re Design Classics, Inc.*, 788 F.2d 1384, 1386 (8th Cir. 1986)). "Thus, relief will not be granted under Rule 60(b)(1) merely because a party is unhappy with the judgment. The party must make some showing justifying the failure to avoid the mistake or inadvertence." 11 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2858 (3d ed.) (hereinafter Wright & Miller). Consequently, "[r]eversal of a [bankruptcy] court's denial of a Rule 60(b) motion is rare because Rule 60(b) authorizes relief in only the most exceptional of cases.' " *Noah v. Bond Cold Storage*, 408 F.3d 1043, 1045 (8th Cir. 2005) (quoting *Int'l Bhd. of Elec. Workers v. Hope Elec. Corp.*, 293 F.3d 409, 415 (8th Cir. 2002)).

In *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship,* 507 U.S. 380, 382-83 (1993), the Supreme Court addressed whether a bankruptcy creditor's failure to meet a filing deadline constituted "excusable neglect." Although the Court analyzed the "excusable neglect" language contained within Bankruptcy Rule 9006(b)(1), the Court also examined the phrase as it appeared within several of the Federal Rules of Civil Procedure. *Id.* at 391-92. In the specific context of Rule 60(b), the Court concluded the rule's "neglect" language "encompasses situations in which the failure to comply with a filing deadline is attributable to negligence." *Id.* at 394. With respect to whether a party's

negligence is ultimately "excusable," the Court identified a number of factors to consider, such as "the danger of prejudice to the [other party], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Id.* at 395. The Eighth Circuit regularly has applied the factors identified in the *Pioneer* decision to subsequent "excusable neglect" cases. *See, e.g., Union Pac. R. Co. v. Progress Rail Servs. Corp.*, 256 F.3d 781, 783 (8th Cir. 2001); *Feeney v. A T & E, Inc.*, 472 F.3d 560, 563 (8th Cir. 2006)). Additionally, the Eighth Circuit has "also concluded 'the existence of a meritorious defense continues to be a relevant factor' " in Rule 60(b) cases. *Union Pac. R. Co.*, 256 F.3d at 783 (citing *Johnson v. Dayton Elec. Mfg. Co.*, 140 F.3d 781, 784 (8th Cir. 1998)).

Ruling on Vucurevich's motion, the bankruptcy court identified each of the equitable factors enumerated by the Eighth Circuit, noting that the court "must consider all relevant circumstances." Bankr. Docket 34 at 1 (citing *Feeney*, 472 F.3d at 562-63). The bankruptcy court did not, however, issue findings and conclusions with respect to each factor. Rather, the bankruptcy court appears to have based its decision primarily on the reason for the delay and whether it was within Vucurevich's reasonable control, and if Vucurevich had demonstrated a meritorious defense. *Id.* at 1-2. Based on its analysis, the bankruptcy court denied Vucurevich's motion.

Vucurevich argues the bankruptcy court abused its discretion because it did not consider all of the relevant factors and it considered irrelevant factors.

Docket 6 at 5. First Midwest contends that the bankruptcy court properly identified and considered each relevant factor. Docket 7 at 5. Although the bankruptcy court did not provide detailed analysis with respect to each of the *Pioneer* factors, the Eighth Circuit has held that "a court's failure to explicitly balance the *Pioneer* factors does not mandate an automatic reversal." *In re Guidant Corp. Implantable Defibrillators Prods. Liab. Litig.*, 496 F.3d 863, 866 n.3 (8th Cir. 2007) (citing *Gibbons v. United States*, 317 F.3d 852, 854 n.4 (8th Cir. 2003)). Rather, because the bankruptcy court did not issue explicit findings on each factor, this court must "consider whether the evidence relating to that factor supports the court's conclusion that the late filing was not due to excusable neglect." *In re Jones Truck Lines*, 63 F.3d 685, 687 (8th Cir. 1995)).

## I.   Did the Bankruptcy Court Abuse its Discretion Denying Vucurevich's Motion for Relief under Rule 60(b)(1)?

### A.   The *Pioneer* Equitable Factors

#### i.   Reason for the Delay

The Eighth Circuit has stated that the party's reason for their delay is "[t]he most important factor in the analysis[.]" *See, e.g., Feeney*, 472 F.3d at 563; *Gibbons*, 317 F.3d at 854 (quoting *Lowry v. McDonnell Douglas Corp.*, 211 F.3d 457, 463 (8th Cir. 2000) (noting the *Pioneer* factors do not carry equal weight); *but see Union Pac. R. Co.*, 256 F.3d at 783 (faulting the district court for focusing exclusively on the party's reason for its mistake). "While prejudice, length of delay, and good faith might have more relevance in a closer case, the reason-for-delay factor will always be critical to the inquiry." *Gibbons*, 317 F.3d at 854 (quoting *Lowry*, 211 F.3d at 463)). Nonetheless, if a party's reason for its

delay is not satisfactory, "relief may be required where other equitable considerations weigh strongly in favor of setting aside the default judgment." *Feeney*, 472 F.3d at 563. Attorney ignorance or carelessness, however, is generally not the type of neglect held to be excusable under Rule 60(b). *Noah,* 408 F.3d at 1045 (citing cases).

Vucurevich was receiving counsel from several attorneys with respect to this and other bankruptcy proceedings. One of his attorneys, Anker, received First Midwest's motion for summary judgment and its accompanying documentation. Docket 6 at 3; Bankr. Docket 26-5 (certificate of service). According to Anker's affidavit filed with the bankruptcy court, he believed Vucurevich and another attorney in Sioux Falls were attempting to resolve the dispute between Vucurevich and First Midwest. Bankr. Docket 32-1 at ¶ 7. Anker forwarded the summary judgment materials to Vucurevich and asked if Vucurevich wanted his help attempting to settle the matter with First Midwest. *Id.* at ¶ 8. Because Anker received no response, he believed Vucurevich and the Sioux Falls attorney were working on settlement negotiations. *Id.* at ¶ 9. Anker thereafter continued to represent Vucurevich in several other proceedings. *Id.* at ¶ 10.

Anker states that, on March 14, 2014, Vucurevich contacted him via email and explained that a settlement agreement between Vucurevich and another bankruptcy creditor had been reached. *Id.* at ¶ 12. Anker replied, inquiring about First Midwest. *Id.* at ¶ 13. Vucurevich is said to have responded that it "looks like they'll accept." *Id.* at ¶ 14. Based on this

exchange, Anker believed the dispute between First Midwest and Vucurevich would settle and, consequently, he did not respond to First Midwest's summary judgment motion before the court's filing deadline. *Id.* at ¶¶ 15-16. On March 31, 2014, when First Midwest's unopposed motion for summary judgment was granted, Anker realized his assumption was incorrect. *Id.* at ¶ 17.

Vucurevich argued before the bankruptcy court that, in light of these circumstances, the court should weigh this factor in his favor. Bankr. Docket 32-2 at 5-6. The bankruptcy court found, however, that the reason for Vucurevich's failure to meet the court's filing deadline was within his reasonable control. Bankr Docket 34 at 1. Additionally, the bankruptcy court elaborated that the decision to focus on attempting to settle the matter, rather than timely responding to the merits of First Midwest's motion, was attributable to Vucurevich alone. *Id.*

Here, Vucurevich reiterates his argument that this factor should weigh in his favor and asserts that, even if it does not, the other equitable considerations ultimately justify granting relief. Docket 6 at 9 (citing *Union Pac. R. Co.*, 256 F.3 at 783; *Feeney*, 472 F.2d at 563).[3] First Midwest argues that

---

[3] Vucurevich also cites the pre-*Pioneer* case of *SLA Prop. Mgmt., Ltd. v. Angelina Cas. Co.*, 856 F.2d 69, 71-72 (8th Cir. 1988) for support. There, the district court relied upon Rule 54(b) as well as Rule 60(b) to vacate a default judgment it had entered against one of several parties. *Id.* at 71. The Eighth Circuit sustained the district court's holding under Rule 54(b), because the party's default had not resulted in a final judgment and the district court therefore retained the authority to alter its ruling. *Id.* at 72. The Eighth Circuit did not rule on the parties' arguments with respect to Rule 60(b).

Vucurevich has proffered no evidentiary support beyond Anker's own statement that settlement negotiations between First Midwest and Vucurevich were taking place. Docket 7 at 5-6. Additionally, First Midwest asserts Anker's belief that settlement negotiations were underway would not relieve Vucurevich from filing a response by the bankruptcy court's deadline. *Id.* at 6. Further, First Midwest contends that, while Anker may have been involved in other adversary matters on behalf of Vucurevich, an attorney's caseload or schedule cannot form the basis of excusable neglect. *Id.* (citations omitted). Moreover, because Vucurevich knew of the pending summary judgment motion but presented no evidence that he was unable to respond to it, his failure to file a response was within his control. *Id.* at 7-8 (citing *Feeney*, 472 F.3d at 563).

The Eighth Circuit has examined the legitimacy of a party's reason for its failure to meet a filing deadline on numerous occasions. For example, in *Feeney*, 472 F.3d at 562, the defaulting party neglected to check his mail and consequently failed to file a timely response to a summary judgment motion. The Eighth Circuit noted this factor weighed heavily against granting relief as the defaulting party was "careless to the point of indifference." *Id.* at 563. Likewise, in *Gibbons*, 317 F.3d at 844, [4] the fact that counsel was on vacation and subsequently developed an illness did not excuse the defaulting party's failure to meet a filing deadline.  The court explained that counsel's neglect was

_____

[4] The *Gibbons* and *Lowry* cases involved Fed. R. App. P. 4(a)(5), which allows a district court to extend the time to file a notice of appeal if the moving party demonstrates "excusable neglect or good cause," and the Eighth Circuit applied the *Pioneer* factors in both decisions. *See Gibbons*, 317 F.3d at 853-54; *Lowry*, 211 F.3d at 462.

not excusable, but rather showed "a marked indifference to a pending matter for more than two months despite obvious points where earlier missteps might have been mitigated." *Id.* at 855 (citing *Lowry*, 211 F.3d at 464). In *Lowry*, 211 F.3d at 463, an attorney miscalculated the date upon which a court filing was due. Explaining this factor is "key to the analysis," the Eighth Circuit described the attorney's error as "garden-variety attorney inattention," which weighed against granting relief. *Id.* at 463-64.

Conversely, the Eighth Circuit has expressed some geniality in certain circumstances involving settlement discussions. For example, in *In re Jones Truck Lines*, 63 F.3d at 687-88, the Eighth Circuit looked favorably on counsel's proffered reason of saving additional expenses for both parties. The court explained that evidence had been presented which showed that "both sides were interested in pursuing settlement negotiations during the period when Foster's time for filing its answer was running." *Id.* at 688. In *MIF Realty*, 92 F.3d at 756, the record demonstrated that the parties had represented to each other that the material terms of a settlement had been agreed upon. After the court was notified that settlement had been reached, the district court dismissed the action with prejudice. When the parties had difficulty reducing the settlement agreement to writing, MIF sought to set aside the dismissal, but the district court refused to grant relief under Rule 60(b). *Id.* As the Eighth Circuit explained, "[t]he mistake in this case did not involve attorney error but a misunderstanding among the parties resulting in lack of mutual assent to the settlement agreement." *Id.* at 757. Noting that "[t]his is precisely the type of

mistake that Rule 60(b) is intended to redress," the Eighth Circuit reversed and remanded to the district court. *Id.*

The present case is unlike those involving settlement discussions, however, because there appears to be no evidence that both parties were pursuing a settlement, which presaged Vucurevich's default. *Cf. In re Jones Truck Lines*, 63 F.3d at 687-88 (noting evidence showed both sides were interested in pursuing settlement); *MIF Realty*, 92 F.3d at 756 (explaining that the failure to reduce the agreement to writing "demonstrates that the parties' initial belief that they had agreed to the material terms of a settlement was mistaken."). Rather, Anker's belief that a settlement was underway appears to have been based on Vucurevich's silence to Anker's initial inquiry about pursuing a settlement and a later, and apparently brief, email exchange between Vucurevich and Anker. Bankr. Docket 32-1 at ¶¶ 8-9, 12-15. While this email exchange, wherein Vucurevich is said to have stated that it "looks like they'll accept," may lend some credence to Anker's belief, those emails have not been reproduced nor do they offer anything more than Vucurevich's opinion. In *In re Bermingham*, 201 B.R. 808 (Bankr. W.D. Mo. 1996), the bankruptcy court observed:

> Debtor argues that she did not file a response to AT & T's Complaint filed June 3, 1996, because she was negotiating a settlement. This fact is substantiated by a letter from AT & T to debtor's attorney dated April 3, 1996, and a letter from debtor's attorney to AT & T dated June 3, 1996. Debtor's answer was due on or before July 5, 1996. By that time, it appeared the parties had agreed upon a settlement. Debtor moved to file her Answer out of time within days of filing her Motion to Withdraw Stipulation and Consent Judgment. Under these facts, I find that debtor's

> inadvertence in failing to file a timely Answer to AT & T's
> Complaint is excusable.

*Id.* at 813 n.1. By contrast, there is nothing in the record which demonstrates that First Midwest was ever involved in settlement discussions with Vucurevich. Instead, Anker's affidavit appears to show that he honestly–but mistakenly–believed the matter would be settled before the bankruptcy court's filing deadline came to pass.

Assuming Anker's belief was genuine, however, that would not explain why Vucurevich's failure to meet the court's filing deadline was nonetheless reasonable. *See Noah*, 408 F.3d at 1045 ("To be excusable, however, the neglect must be accompanied by a showing of good faith and some reasonable basis for not complying with the rules.") (citation omitted). It appears Vucurevich's position is that, by design or inadvertence, counsel believed no precaution would be taken against the very real possibility that a response to First Midwest's summary judgment motion would need to be filed. At best, the facts of this case appear to be closer to the "careless[ness] to the point of indifference" denounced in *Feeney* or the "garden-variety attorney inattention" described in *Lowry* than the type of neglect that would otherwise be excusable. *See Inman v. Am. Home Furniture Placement, Inc.*, 120 F.3d 117, 119 (8th Cir. 1997) (explaining "Rule 60(b) has never been a vehicle for relief because of an attorney's incompetence or carelessness.") (citation omitted); *see also Ivy v. Kimbrough*, 115 F.3d 550, 552 (8th Cir. 1997) (concluding "counsel for Ivy had no reasonable basis for ignoring the motions for summary judgment."). As the bankruptcy court observed, Vucurevich's default was attributable to his

- 12 -

decisions or inattentiveness alone. While Vucurevich may be correct that "[s]ettlement helps with judicial economy and results in a disposition which both parties are agreeable to," Docket 6 at 9, failing to respond to a party's motion for summary judgment without adequate justification, and then asking the court to set aside the resulting judgment, does not. Consequently, the weight of this factor rests against Vucurevich.

### ii. Meritorious Defense

With respect to the meritorious defense factor, "[t]he underlying concern is to determine whether there is some possibility that the outcome of the suit after a full trial will be contrary to the result achieved by the default." Wright & Miller, § 2697. Thus, the court's inquiry is whether a party's "proffered evidence 'would permit a finding for the defaulting party[.]' " *Johnson*, 140 F.3d at 785 (quoting *Augusta Fiberglass Coatings, Inc. v. Fodor Contracting Corp.*, 843 F.2d 808, 812 (4th Cir. 1988)). The party in default must provide at least "minimally adequate factual support to illustrate the potential viability of his asserted defenses" for purposes of this factor. *Stephenson v. El-Batrawi*, 524 F.3d 907, 914 (8th Cir. 2008). Thus, "bald allegation[s] . . . without the support of facts underlying the defense, will not sustain the burden of the defaulting party to show cause why the entry of default should be set aside; the trial court must have before it more than mere allegations that a defense exists." *Id.* (quoting *Fink v. Swisshelm*, 182 F.R.D. 630, 632 (D. Kan. 1998) (alterations in original).

In the bankruptcy proceeding, Vucurevich filed an answer to First Midwest's adversarial complaint denying the majority of First Midwest's allegations and asserting various affirmative defenses. *See* Bankr. Docket 12 at 1-3. First Midwest's motion for summary judgment argued Vucurevich was not entitled to a discharge of indebtedness due to a number of alleged statutory violations. *See* Bankr. Docket 26-4 at 3-4. First Midwest's motion and brief were supported by a statement of undisputed material facts and evidentiary exhibits. Bankr Docket 26-1, 26-2, 26-3.

After the bankruptcy court entered summary judgment in favor of First Midwest, Vucurevich's argument to set aside that judgment asserted that his answer and affirmative defenses showed that he had several meritorious defenses. Bankr. Docket 32-2 at 6. Additionally, although Vucurevich acknowledged that it was "not a 'defense' per se," Vucurevich argued that the purported existence of settlement negotiations should weigh in favor of setting aside the judgment. *Id.* The bankruptcy court concluded, however, that Vucurevich failed to demonstrate a meritorious defense. Bankr. Docket 34 at 1. The bankruptcy court noted that Vucurevich did not dispute or address any of First Midwest's arguments in its motion for summary judgment or its statement of undisputed material facts. *Id.* at 1-2. Additionally, because Vucurevich's answer to First Midwest's adversarial complaint contained only

legal assertions rather than allegations of fact,[5] Vucurevich could not rely upon his answer to satisfy the meritorious defense inquiry. *Id.* at 2.

Here, Vucurevich similarly states that the possibility of a settlement between the parties should tip this factor in his favor. Docket 6 at 10. First Midwest responds by stating that Vucurevich has offered no evidence or testimony that could demonstrate Vucurevich has a meritorious defense to any of First Midwest's arguments in its motion for summary judgment and supporting documentation. Docket 7 at 8-9. First Midwest asserts that, for a party to satisfy this factor, it must present more than an allegation that a defense exists. *Id.* at 9 (citing *Pease v. Pakhoed Corp.*, 980 F.2d 995, 1000 (5th Cir. 1993) (summarizing *Gomes v. Williams*, 420 F.2d 1364, 1366 (10th Cir. 1970).

First Midwest's arguments against the discharge of Vucurevich's debts were based in part on the facts that Vucurevich committed fraud and failed to maintain or retain required financial information. *See* Bankr. Docket 26-4 at 3-7. That the parties may have been pursuing a settlement to their dispute is not the sort of "proffered evidence [which] 'would permit a finding for' " Vucurevich on the issue of fraud, or any of the other allegations set forth by First Midwest. *See Johnson*, 140 F.3d at 785 (quoting *Augusta Fiberglass Coatings*, 843 F.2d

---

[5] Vucurevich admitted to five of First Midwest's allegations in its adversary complaint. *See* Docket 12 at ¶ 3. Those allegations related to the existence of the involuntary petition filed against Vucurevich on June 27, 2011, the bankruptcy court's jurisdiction over First Midwest's adversary complaint, and the status of three loans between First Midwest and Vucurevich. Docket 1 at ¶¶ 1, 3, 4-6.

at 812). Rather, it is a restatement of Vucurevich's justification for failing to respond to First Midwest's motion in a timely fashion. Vucurevich was required to demonstrate at least "minimally adequate factual support to illustrate the potential viability" of some defense to the allegations against him. *See Stephenson v. El-Batrawi*, 524 F.3d at 914. Because he has not done so, the court agrees with the bankruptcy court's finding that Vucurevich has failed to show the existence of a meritorious defense.[6] Therefore, this factor also weighs against Vucurevich.

### iii.   Danger of Prejudice to First Midwest

When ruling on a Rule 60(b) motion, a court must "also consider whether any substantial rights of the nonmoving party have been prejudiced." *MIF Realty L.P. v. Rochester Assocs.*, 92 F.3d 752, 756 (8th Cir. 1996) (citing *Hoover v. Valley West D.M.*, 823 F.2d 227, 230 (8th Cir. 1987)). The Eighth Circuit has stated that "prejudice may not be found from delay alone or from the fact that the defaulting party will be permitted to defend on the merits." *Johnson*, 140 F.3d at 785. Rather, prejudice requires a showing "such as 'loss of evidence, increased difficulties in discovery, or greater opportunities for fraud and collusion.' " *Id.* (quoting *Berthelsen v. Kane*, 907 F.2d 617, 621 (6th Cir. 1990)); *see also Stephenson*, 524 F.3d at 915 (concluding that the increased difficulty

---

[6] This conclusion is further supported by this court's finding in *Vucurevich v. Valley Exchange Bank* (Civ. 14-4114-KES) and *Vucurevich v. US Bank* (Civ. 4115-KES) that Vucurevich was not entitled to discharge because of his failure to explain satisfactorily the loss or deficiency of assets to meet the debtor's liabilities under 11 U.S.C. § 727(a)(5) and his failure to properly maintain records under 11 U.S.C. § 727(a)(3).

of conducting discovery and re-litigating claims after a default had been entered several years ago constituted sufficient prejudice).

In support of his motion to set aside the bankruptcy court's judgment, Vucurevich argued that First Midwest would suffer little prejudice because its motion could still be decided on the merits and the parties could still pursue settlement negotiations. Bankr. Docket 32-2 at 7. Vucurevich asserted that no evidence had been lost nor had any circumstances changed which would have made it more difficult for First Midwest to argue its case. *Id.* Unlike the other factors, the bankruptcy court did not issue specific findings or conclusions with respect to this factor. Vucurevich's argument before this court, with the addition of faulting the bankruptcy court for not explicitly weighing this factor, is the same. Docket 6 at 6-7.

Here, First Midwest asserts that there is a danger of prejudice because Vucurevich may improperly transfer or sell assets of the bankruptcy estate. Docket 7 at 10. Additionally, First Midwest argues it would incur additional legal fees litigating its summary judgment motion on the merits. *Id.* Moreover, First Midwest quotes at length from *Widmer-Baum v. Chandler-Halford*, 162 F.R.D. 545 (N.D. Iowa 1995), where the court concluded that the prejudice factor includes "the prejudice to the plaintiff of setting aside the default judgment" and "the prejudice that would result if the court failed to enforce its own court-ordered deadline." *Id.* at 7-8 (quoting *Widmer-Baum*, 162 F.R.D. at 555-56).

- 17 -

The Eighth Circuit, however, has explicitly rejected the formulation of prejudice recited in the *Widmer-Baum* decision. Docket 8 at 3-4 (quoting *Johnson*, 140 F.3d at 785). Rather, a finding of prejudice must be shown "in a more concrete way, such as 'loss of evidence, increased difficulties in discovery, or greater opportunities for fraud and collusion." *Johnson*, 140 F.3d at 785. Although First Midwest would incur additional legal fees litigating the summary judgment motion on the merits, that is not analogous to any of the "more concrete" forms of prejudice discussed in *Johnson*. Moreover, the Eighth Circuit's statement that "prejudice may not be found from . . . the fact that the defaulting party will be permitted to defend on the merits," *id.*, appears to acknowledge and reject as prejudicial that the non-defaulting party would incur the very costs it otherwise would have expended in pursuit of its own position on the merits. While First Midwest's apprehension that Vucurevich may somehow sell or transfer assets of the bankruptcy estate could be construed as a "greater opportunit[y] for fraud," that fear is too speculative to demonstrate sufficient prejudice. Consequently, this factor weighs in favor of Vucurevich.

### iv.   Good Faith

Considering the good faith factor, the Eighth Circuit has " 'consistently sought to distinguish between contumacious or intentional delay or disregard for deadlines and procedural rules, and a 'marginal failure' to meet pleading or other deadlines.' " *In re Guidant Corp.*, 496 F.3d at 867 (quoting *Johnson*, 140 F.3d at 784). The court has "rarely, if ever, excused the former." *Id.* Thus,

whether a party attempted to comply with court-imposed deadlines is a relevant consideration. *Id.* (finding a lack of good faith when the defaulting party had three opportunities over several months to comply with court orders but failed to do so). As with the prejudice factor, the bankruptcy court did not explicitly issue findings or conclusions regarding this factor.

Vucurevich contends that attorney Anker believed, based on a communication between himself and Vucurevich, "that [a] settlement had been reached or would shortly be reached." Docket 6 at 8. Although this was an erroneous assumption, Vucurevich asserts that counsel's decision not to respond to First Midwest's motion was nonetheless made in good faith. *Id.* Additionally, Vucurevich asserts that counsel "moved swiftly to remedy the situation," and the fact that his motion to set aside the bankruptcy court's judgment was filed 11 days after the court granted summary judgment in favor of First Midwest further demonstrates good faith. *Id.* at 8-9 (citing *Union Pac. R. Co.*, 256 F.3d at 783). First Midwest responds by reiterating its argument that Vucurevich has not reproduced any evidence beyond Anker's statement that settlement discussions between Vucurevich and First Midwest were taking place. Docket 7 at 12. Similarly, Vucurevich himself has not offered a sworn statement with respect to these communications. *Id.* First Midwest thus asserts that, at best, the good faith factor is neutral. *Id.*

On one hand, the bankruptcy court's March 3, 2014, order stated that Vucurevich's response to First Midwest's motion was due on or before March 28. This order carried a citation to the bankruptcy court's local rules

which prescribe the form and content of summary judgment materials. *Id.* (citing Bankr. D.S.D. R. 7056-1(a)(2)). There is no assertion that the bankruptcy court's order or its citation to the requirements of the local rules was in any way ambiguous or unclear. *Cf. Ceridian Corp. v. SCSC Corp.*, 212 F.3d 398, 404 (8th Cir. 2000) (explaining "the failure to follow the clear dictates of a court rule will generally not constitute such excusable neglect.") (quoting *Canfield v. Van Atta Buick*, 127 F.3d 248, 250 (2d Cir. 1997)). Anker's affidavit states that First Midwest's motion was received, and all documentation was forwarded to Vucurevich. Bankr. Docket at ¶ 8. Vucurevich made no attempt to respond by the court's deadline, and no explanation is given why Vucurevich did not request an extension of the deadline if the dispute was not resolved by settlement by the court's deadline.

On the other hand, assuming Anker's belief about an impending settlement was genuine, it does not appear that Vucurevich "contumaciously" disregarded the court's deadline. *Cf. Guidant Corp.*, 496 F.3d at 867 (noting counsel's "blatant disregard for the deadlines and procedure imposed by the court."); *see also Noah*, 408 F.3d at 1045. Further, although more relevant to the length-of-delay factor, Vucurevich's attempt to address the court's grant of summary judgment within a matter of days also shows a lack of dilatory intent. *Cf. Hunt v. City of Minneapolis, Minn.*, 203 F.3d 524, 527-28 (8th Cir. 2000) (noting the appellant engaged in "a pattern of dilatory conduct" with respect to several court deadlines). Thus, it does not appear that Vucurevich acted in bad faith. The court concludes that this factor is neutral.

### v.    Length of Delay

Assessing this factor requires the court to consider not only the length of a party's delay, but also its impact on judicial proceedings. *Guidant Corp.*, 496 F.3d at 867. Vucurevich contends that the gap of 11 days between the bankruptcy court's grant of summary judgment and his motion to set aside that judgment was minimal, and that no judicial proceedings have been negatively impacted. Docket 6 at 7. First Midwest argues that because Vucurevich has not filed a response to its summary judgment motion, Vucurevich's delay continues unabated. Docket 7 at 11. Additionally, relying on another portion of the *Widmer-Baum* decision, First Midwest contends that Vucurevich's attempt to set aside the bankruptcy court's judgment was carried out with insufficient alacrity to warrant weighing this factor in his favor.

With respect to First Midwest's argument that the duration of Vucurevich's delay is ongoing because a response to its summary judgment motion has never been filed, this is not fatal to Vucurevich's position. For example, in *Feeney*, 472 F.3d at 562, the appellant did not file a response to the appellee's summary judgment motion. Eight days after the district court granted the unopposed motion, the appellant sought relief under Rule 60(b). *Id.* Although it upheld the district court's decision to deny the motion for relief, the Eighth Circuit noted that, "Mitan's delay was relatively brief (he sought relief under Rule 60(b) within eight days of the entry of judgment)." *Id.* at 564. Likewise, in *Union Pacific R. Co.*, 256 F.3d at 782, Progress Rail filed a motion to set aside the default judgment entered against it because it had failed to

respond to Union Pacific's complaint. The Eighth Circuit stated that Progress Rail filed its Rule 60(b) motion "only three weeks after it had notice of the default and less than six months after Union Pacific filed its complaint." *Id.* at 783. The court described this period as a "short-term delay" and saw "no reason to think that providing relief to Progress Rail would disrupt the judicial process in any measurable way." *Id.* Thus, as Vucurevich suggests, the court may look to the date on which relief is sought under Rule 60(b) to determine the length of the defaulting party's delay.

In this case, the delay is 11 days between the bankruptcy court's judgment dated March 31, and Vucurevich's motion to set aside that judgment, which was filed on April 11. Vucurevich's delay is close to the "relatively brief" delay of eight days in *Feeney* and much shorter than the three-week delay in *Union Pacific R. Co.* Additionally, there appears to be no evidence in the record which suggests that the judicial process has been or would be impacted by Vucurevich's delay. *Compare Guidant Corp.*, 496 F.3d at 867 (explaining that the party's delay impacted approximately 1,400 other plaintiffs in a multidistrict litigation) *with Union Pacific R. Co.*, 256 F.3d at 783 (explaining the court had "no reason to think that providing relief to Progress Rail would disrupt the judicial process in any measurable way" following its default and subsequent delay of three weeks). Thus, considering Vucurevich's relatively short delay and the lack of impact on judicial proceedings, the court finds that this factor weighs in favor of Vucurevich.

### B.      Balancing the Equitable Factors

Balancing these factors reveals a number of similarities between this case and the *Feeney* decision. There, the district court's decision "focused exclusively on the reason for Mitan's default." *Feeney*, 472 F.3d at 563. The Eighth Circuit cautioned that the other *Pioneer* factors should not be ignored, but ultimately agreed with the district court that "[t]he most important factor in the analysis–reason for delay–weighs heavily against" granting relief. *Id.* The Eighth Circuit explained that the appellant's neglect in failing to make arrangements for the receipt of his mail, which led to no response being filed in opposition to a summary judgment motion, was "careless to the point of indifference." *Id.* The Eighth Circuit also determined that the appellant had failed to present a meritorious defense. *Id.* at 563-64. With respect to the equitable balance, the court stated:

> Although Mitan's delay was relatively brief (he sought relief under Rule 60(b) within eight days of the entry of judgment), the Feeneys have not demonstrated substantial prejudice from such a brief delay, and there is no showing that Mitan acted in bad faith, these factors do not outweigh Mitan's carelessness and the absence of any apparent meritorious defense.

*Id.* at 564. Thus, the Eighth Circuit found that the district court did not abuse its discretion by denying the Rule 60 motion for relief. *Id.*; *see also Gibbons*, 317 F.3d at 854 ("While prejudice, length of delay, and good faith might have more relevance in a closer case, the reason-for-delay factor will always be critical to the inquiry.") (quoting *Lowry*, 211 F.3d at 463).

Here, the bankruptcy court's two-page decision may be fairly characterized as "truncated"—similar to the district court opinion in *Feeney*,

472 F.3d at 563. Nonetheless, the bankruptcy court found that the reason for delay and meritorious defense factors weigh against granting relief. Bankr. Docket 34 at 1-2. This court agrees, as it appears counsel's failure to file a response to First Midwest's pending summary judgment motion was also "careless to the point of indifference," and Vucurevich has not demonstrated any meritorious defenses. As in *Feeney*, Vucurevich's delay was relatively brief and First Midwest has not demonstrated a danger of prejudice, but those factors do not outweigh the others. Although this court's independent assessment ascribed neutral weight to the good faith factor, even if it supported Vucurevich's position that would not tip the equitable balance in his favor. *See Feeney*, 472 F.3d at 564; *see also Noah*, 408 F.3d at 1045 (noting "ignorance or carelessness on the part of any attorney" does not ordinarily support granting relief under Rule 60(b)). While the equitable nature of Rule 60 prevents a court from relying on a mathematical or mechanical set of standards to evaluate a claim for relief, it appears that this case is analogous to *Feeney* and may explain why the bankruptcy court relied on that opinion in its decision. *See* Bankr. Docket 34 at 1. Nonetheless, based on a review of the record, this court concludes it was not an abuse of discretion for the bankruptcy court to deny Vucurevich's Rule 60(b)(1) motion.

## II. Did the Bankruptcy Court Consider Improper or Irrelevant Factors?

In its order denying relief, the bankruptcy court noted that Vucurevich had not demonstrated that the purported settlement discussions between himself, First Midwest, and certain other creditors would "ensure nonpriority,

unsecured claims against" Vucurevich stemming from the involuntary bankruptcy petition "are paid similarly to the plaintiffs' compromised claims[.]" Bankr. Docket 34 at 2. Both Vucurevich and First Midwest debate the significance of the bankruptcy court's statement. For example, Vucurevich argues the bankruptcy court improperly considered the treatment of other creditors who were not a party to this dispute, and weighed its determination against Vucurevich. *See* Docket 6 at 11. First Midwest argues that a potential settlement between Vucurevich and creditors of the bankruptcy estate would require court approval before it could be given effect, and the court was therefore not giving great weight to the fact that settlement discussions may have been in progress. Docket 7 at 12-13 (citing Bankruptcy Rule 9019).

First, the bankruptcy court's comment appeared in the portion of its order denying Vucurevich's request for relief under Rule 60(b)(6), rather than in its discussion of Rule 60(b)(1). *See* Bankr. Docket 34 at 2 (noting Vucurevich had not shown his attorneys' errors or the potential settlement constituted "exceptional circumstances" for purposes of Rule 60(b)(6)). Vucurevich's motion before the bankruptcy court was premised on Rule 60(b)(1)'s "excusable neglect" clause, as well as (b)(6), the rule's catch-all provision, which authorizes a court to relieve a party from a final judgment based on "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(6). As the bankruptcy court noted, relief under Rule 60(b)(6) requires a showing of "exceptional circumstances." *See Harley v. Zoesch*, 413 F.3d 866, 871 (8th Cir. 2005)). Additionally, although the bankruptcy court discussed both subsections of the rule, a party cannot assert

the same grounds for relief under both Rule 60(b)(1) and (b)(6). *See Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 863 (1988) ("In particular, Rule 60(b)(6) . . . grants federal courts broad authority to relieve a party from a final judgment . . . provided that the motion is made within a reasonable time and is not premised on one of the grounds for relief enumerated in clauses (b)(1) through (b)(5).") (footnote omitted). Vucurevich's argument for relief was premised on the equitable factors that may permit relief for excusable neglect. *See* Bankr. Docket 32-2 at 5-7. Because Vucurevich cannot argue that excusable neglect justifies relief under both Rule 60(b)(1) and (b)(6), this court need not address the bankruptcy court's denial of Vucurevich's Rule 60(b)(6) request.

Second, in addition to being confined within the bankruptcy court's discussion of Rule 60(b)(6), there is no evidence which supports Vucurevich's argument that the bankruptcy court nonetheless considered its statement regarding the treatment of other creditors as a factor in its Rule 60(b)(1) analysis. *See* Docket 6 at 11. Rather, the bankruptcy court specifically enumerated each of the equitable factors employed by the Eighth Circuit to determine if a party has established excusable neglect. Bankr. Docket 34 at 1 (citing *Feeney*, 472 F.3d at 562-63). Even if the bankruptcy court did give the treatment of other creditors some consideration in its Rule 60(b)(1) analysis, and assuming it was improper for the court to do so, the bankruptcy court would not have abused its discretion unless it gave significant weight to that factor. *See City of Duluth*, 702 F.3d at 1152 ("A court abuses its discretion . . .

when an irrelevant or improper factor is considered and given significant weight[.]"). Based on this record, it does not appear the bankruptcy court did so. Consequently, the court finds that the bankruptcy court did not abuse its discretion by giving significant weight to an improper or irrelevant factor.

## CONCLUSION

The bankruptcy court did not abuse its discretion by concluding that Vucurevich had failed to demonstrate excusable neglect that would entitle him to relief under Rule 60(b)(1). Additionally, the court finds that the bankruptcy court did not abuse its discretion by giving significant weight to an improper or irrelevant factor in reaching its decision. Accordingly, it is

ORDERED that the bankruptcy court's decision denying Vucurevich's motion to set aside the court's judgment is affirmed.

Dated February 13, 2015.

BY THE COURT:


/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE